UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KIMSEY O'NEAL COOPER                                          PLAINTIFF

V.                                                     CIVIL ACTION NO. 3:11CV240 DPJ-FKB

WALGREEN CO.                                                     DEFENDANT

ORDER

This employment-discrimination action is before the Court on Defendant Walgreen's motion for summary judgment [21] pursuant to Federal Rule of Civil Procedure 56. Plaintiff Kimsey O'Neal Cooper[1] has responded in opposition. The Court, having considered the memoranda and submissions of the parties along with the relevant authorities, finds that Defendant's motion should be granted.

I.      Fact and Procedural History

O'Neal, an African-American, worked for Walgreen ("Walgreens") for fifteen years, the last five of which as a District Pharmacy Supervisor. O'Neal claims that she "always performed her job well," but her supervisor, James Peloquin, began maligning her performance just before, and immediately following, her attendance at a minority-centered pharmaceutical conference. She claims Peloquin subjected her to "unwarranted disciplinary action, harassing changes in her working conditions and continuous harassment." Compl. [1] ¶ 14. O'Neal ties this poor treatment to her attendance at the conference. Believing this conduct constituted discrimination based on race and retaliation, O'Neal filed a charge of discrimination with the Equal Employment Opportunity Commission. She received notice of her right to sue and instituted this

---

[1] Since the filing of this action, Plaintiff now goes by Kimsey O'Neal, thus the parties refer to her as "O'Neal."

action, asserting violations of Title VII and 42 U.S.C. § 1981. After the completion of discovery, Walgreens moved for summary judgment as to all claims, and O'Neal responded in opposition following a show cause order. The Court has jurisdiction over this action and is prepared to rule.

II.  Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine

2

issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

III.   Analysis

O'Neal asserts two Title VII claims in her Complaint: race-based hostile work environment and retaliation. The first relates to the working conditions after she announced plans to attend the conference. The second alleges retaliation for a July 21, 2009, email she sent Peloquin after the conference recounting his reluctance for her to attend. Neither claim survives summary judgment.

   A.   Race Discrimination

Turning first to the race discrimination claim, Plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment by showing: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Walgreens focuses its attention on whether the alleged harassment affected a term, condition, or privilege of employment. The Court finds that it did not.[2]

"For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 268 (internal quotations omitted). To make that

---

[2] Neither party analyzes the third prong—whether the alleged harassment for going to the conference was "based on race." Though an interesting question, the Court assumes, without deciding, that the third prong is met.

determination, the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted).

O'Neal argues that she suffered "constant discrimination and harassment," Pl.'s Resp. [26] at 4, but the record is more benign. Specifically, O'Neal highlights three examples of harassment at various times in her submissions: (1) Peloquin gave O'Neal an overall rating of "needs improvement" on her performance review in August 2009; (2) O'Neal was told that she would receive monthly reviews; and (3) Peloquin gave O'Neal a single written warning on July 23, 2009, accusing her of poor time-management skills and documenting four instances of purportedly missed deadlines. Pl.'s Dep. [21-1] at 28; Pl.'s Resp. [26] at 2, 9; Pl.'s Compl. [1] at 2-3.

Factually, there is no dispute that O'Neal's performance review concluded that she met expectations in some areas, needed improvement in others, and was overall rated "needs improvement." This was not the lowest potential rating. Pl.'s Dep. at 63. Regarding the single written warning, she disputes some, but not all, of the violations, contending that the rest were no big deal. And as for the monthly reviews, it appears that she was told she and Peloquin "would be meeting monthly to talk about [her] performance," *id*. at 49, but no such reviews occurred. *Id*. at 48.

These facts, viewed in their totality under the applicable standards, fail to demonstrate severe or pervasive harassment. First, the entire episode lasted for about one month and included only three alleged acts, one of which never transpired. Second, nothing about the conduct was

severe. Instead, Walgreens simply employed typical management tools, and the disagreements were merely "ordinary tribulations of the workplace" for which Title VII offers no redress. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Third, there was never any physically threatening or humiliating conduct. Fourth, there were no offensive utterances at all. And finally, the three alleged acts would not "unreasonably interfere[] with an employee's work performance." *Ramsey*, 286 F.3d at 268. Thus, the conduct was not severe or pervasive.

This finding is buttressed by Fifth Circuit precedent rejecting hostile-work-environment claims with far more egregious acts of harassment. *See, e.g., Hockman v. Westward Commc'ns LLC*, 407 F.3d 317 (5th Cir. 2004) (finding no hostile work environment where co-worker slapped plaintiff on her buttocks with newspaper, grabbed or brushed against her breasts and buttocks several times, and held her face while trying to kiss her); *Mosley v. Marion County*, 111 F. App'x 726, 728 (5th Cir. 2004) (holding three incidents involving racial slurs was insufficient to support hostile-work-environment claim); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001) (finding that plaintiffs failed to establish severe or pervasive harassment based on eight incidents of alleged racial harassment during a two-year period).

Moreover, two district court decisions from within the circuit rejected hostile-work-environment claims with facts similar to those O'Neal alleges. *See Thomas v. S. Farm Bureau Cas. Ins. Co.*, No. 07–960, 2011 WL 201293, at *6 (M.D. La. Jan. 18, 2011) ("[W]ithout more, negative performance reviews, pay raise denials, and requiring an employee to obtain supervisory approval before implementing certain job tasks, when such approval was not previously required—i.e., what Defendant refers to as 'ordinary tribulations of the workplace'—are not sufficiently severe, pervasive, offensive and/or abusive to constitute a hostile work environment

5

under Title VII."); *Arensdorf v. Snow*, No. H-05-2622, 2006 WL 3302532, at *11 (S.D. Tex. Nov. 13, 2006) ("[The supervisor's] actions in evaluating Plaintiff's performance, counseling her on performance deficiencies, and placing her on a [performance improvement plan] are not harassment, rather, they are personnel decisions related to Plaintiff's job performance."), *aff'd*, 259 F. App'x 639, 644 (5th Cir. 2007).

Despite this authority, O'Neal cites no cases suggesting that these facts create severe or pervasive harassment. The Court finds that Plaintiff's complaints do not rise to the level of a hostile work environment because the alleged harassment would not affect a term, condition, or privilege of employment. The discrimination claim is due to be dismissed.

B.     Retaliation

Plaintiff's retaliation claim similarly falls short at the prima facie stage. To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011). O'Neal cannot meet the first prong because her July 21, 2009 email did not oppose unlawful conduct.[3]

---

[3]Although the Court focuses on the first prong, it would alternatively hold that the facts fail to establish an adverse employment action because these alleged reprisals would not dissuade a reasonable employee from complaining. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Causation is likewise lacking because Peloquin was already discussing the time-management issues with O'Neal before her protected activity, *see* Pl.'s Dep. at 63, and she testified that the alleged harassment began on July 7 when she mentioned her desire to attend the conference. *See* Pl.'s Dep. at 41 ("I felt mistreated, mistreated from that day forth in terms of – my whole world changed because of this meeting."). This was obviously before the alleged protected activity on July 21. *C.f.*, *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 461 (5th Cir. 2008) (holding that conduct was not retaliatory because it predated plaintiff's protected activity).

6

"An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII. 42 U.S.C. § 2000e–3(a)." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). "An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful, and the employee holds a good faith, reasonable belief of the conduct's unlawfulness." *Clark v. Chickasaw Cnty., Miss.*, No. 1:09CV192-SA-JAD, 2010 WL 3724301, at *3 (N.D. Miss. Sept. 16, 2010) (citations and quotation omitted); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (noting a plaintiff must show she had a "reasonable belief that the employer was engaged in unlawful employment discrimination"). "Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." *Clark*, 2010 WL 3724301, at *3 (citation and internal quotation marks omitted).

O'Neal claims that she opposed discrimination by sending a July 21, 2009 email to Peloquin that "made it known that she regarded Mr. Peloquin's reluctance to allow her to attend the minority conference violated her civil rights provided by Title VII." Pl.'s Resp. [26] at 9. But that description is more than a little generous. Not once does the email mention Title VII, harassment, discrimination, or any accusation of unlawful conduct. Instead, the email recaps several conversations between O'Neal and Peloquin regarding various time-management and communication issues. With respect to the conference, she stated:

> As per my schedule I provided to you on June 29, 2009 and as discussed on July 6, 2009, I advised you that I would be at the NPhA conference from July 17-20, 2009 in Chicago, Illinois. As discussed, the NPhA (National Pharmaceutical

7

> Association) is a minority organization which was founded to promote diversity and encourage minority participation in the field of pharmacy. At the time of our discussion, you asked if it was necessary for me to attend this event. I advised that I had attended this conference for the past 3 years and that Walgreens had indicated that they desired that I continue to go to the conference because it was beneficial to Walgreens in that it would assist in Walgreens efforts to recruit and obtain diversity in its employment of pharmacist.
>
> On July 6, 2009, you asked on two or more occasions if it was necessary for me to attend the aforementioned conference. I advised that it was a predominately minority conference and that Walgreens had indicated that they wanted a minority pharmacy supervisor to attend and that I had agreed to participate and represent Walgreens in that capacity. At that point I advised that if you did not want me to go then perhaps you could contact the office of recruitment and assertain [sic] whether or not they had any other individuals who could attend the conference and represent and participate on behalf of Walgreens as I have the past 3 years. At that time you advised that you would not do that because the plans had already been made.

Pl.'s Dep. [21-1] Ex. 6.

To place this history in context, there is no dispute that O'Neal had scheduled five holiday/vacation days in July 2009, and attendance at the conference would take her off the job for nine work days in one month. Pl.'s Dep. at 36–38. According to Peloquin, the extent of the absences from a high-level manager prompted him to ask O'Neal whether her attendance was necessary. Peloquin Aff. at ¶ 15. Despite this hesitation, Peloquin dropped the issue and allowed O'Neal to attend the conference as he had done the previous year. *Id*. ¶ 14. With these undisputed facts, the email was not protected activity for two primary reasons.

First, when viewed in a light most favorable to O'Neal, the email was not in opposition to racial discrimination. For the most part, the email recaps conversations between Peloquin and O'Neal regarding various time-management and communication problems. Tellingly, the email is titled "RE: Workflow Enhancement Program" and the opening sentence reads : "This email

8

serves to confirm the status of the above referenced matter." O'Neal does mention the conversations regarding the conference, and that it was minority-oriented, but only in the context of recapping those and other conversations with Peloquin. She never mentions discrimination, harassment, Title VII, or any opposition to conduct she found unlawful.

Simply put, and as Walgreens argued, the email does not reference or "oppose" race-based discrimination. *See Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (finding no protected activity because plaintiff's complaint of unfair treatment never referred to the discriminatory treatment as age-based); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (affirming summary judgment on retaliation claim where the plaintiff's email focused on a workplace incident and "the deteriorating relationship" between the plaintiff and her supervisor); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (holding that plaintiff did not engage in protected activity when her complaint failed to "mentioned that she felt she was being treated unfairly due to her race or sex"). Plaintiff offered no countervailing or analogous authority suggesting that her email constitutes protected activity. *See* Pl.'s Resp. [26] at 9 (stating, without authority, that the email "made it known" she opposed violation of civil rights under Title VII).

Second, these facts fail to reflect a reasonable belief that the employer engaged in unlawful employment discrimination. *See Turner*, 476 F.3d at 348. To the extent the email can be viewed as "opposition," O'Neal argues that she was opposing "Mr. Peloquin's *reluctance* to allow her to attend the minority conference." Pl.'s Resp. [26] at 9 (emphasis added). But Peloquin ultimately allowed O'Neal to attend as he had done in the past. There is no reference to any other allegedly unlawful conduct, and the merely questioning O'Neal about the need for

9

attending the conference is not unlawful. O'Neal could not have reasonably believed that it was. *See Turner*, 476 F.3d at 348.

IV. Conclusion

For the reasons stated, the Court finds that Defendant's motion should be granted and this case should be dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 25th day of May, 2012.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE